IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ABIGAIL ALT,

                Plaintiff,

    v.

SCHOOL DISTRICT OF BARABOO,                OPINION and ORDER
KEVIN H. VODAK, RAINEY L. BRIGGS,
YVETTE UPDIKE, JOEY RIVAS, AMY DELONG,        25-cv-208-jdp
CAROLYN BONANNO, TIM HEILMAN,
GWYNNE PETERSON, CATHERINE KALISH,
and SARAH ECKERT,

                Defendants.

---

Plaintiff Abigail M. Alt was a principal within the Baraboo School District. She contends that she was terminated in violation of the Due Process Clause and state law. Defendants move for summary judgment on all of Alt's claims.

Alt has identified fair criticisms of defendants' decision. But the question under the Due Process Clause is not whether the employer made the right call, but whether the employee received fair notice and an opportunity to be heard. Defendants provided that, so Alt's due process claim fails. The court will decline to exercise jurisdiction over the state-law claims.

BACKGROUND

### A. Objections to Alt's proposed findings of fact

Defendants object to some of Alt's proposed findings of fact on the ground that they rely on evidence that Alt did not file until after her May 29 deadline for filing opposition materials. Specifically, Alt filed two declarations a few minutes late in the early morning hours of May 30, Dkt. 59 and Dkt. 60; she filed three depositions two days late on June 1, Dkt. 61;

Dkt. 62 and Dkt. 63; she filed two depositions four days late on June 3, Dkt. 64 and Dkt. 65; and she filed numerous exhibits eight days late on June 7, Dkt. 66; Dkt. 67; and Dkt. 68.

The court is not concerned with documents filed a few minutes late. But Alt did not seek an extension to file any of the above documents after the deadline. Alt's only excuse is that her counsel, Steven Porter, "understands that it has always been the custom of this Court to allow the docketing of depositions and exhibits at any time prior to the time the Court actually needs to consider them." Dkt. 73, at 2. Counsel identifies no basis for that understanding, and it is incorrect. The court's summary judgment procedures state that a party's brief must be accompanied by all the evidence cited in the party's proposed findings of fact. Motions for Summary Judgment II.A.4, *attached to* Dkt. 28. The court expects the parties to meet the deadline or seek an extension based on good cause. Parties may not decide for themselves what materials must be filed on the deadline and what materials may be filed at a later date of that party's choosing.

Having said that, the court concludes that striking the untimely evidence would not be a proportional response because defendants do not identify any prejudice they suffered as a result of the untimely filings. Defendants do not say that they lacked access to any of that evidence, and they do not say that their ability to file a reply was impaired. Defendants did not ask for an extension of time to file their reply. So the court will consider the evidence.[1] But Alt's counsel is now on notice: the court expects counsel to meet all deadlines. Any failure to meet a deadline creates the risk that the untimely submission will be struck.

---

[1] The one exception is that the court will not consider Alt's proposed findings of fact based on the deposition of someone identified as "Sabol." Dkt. 54, ¶¶ 127–29. Alt did not file that deposition on the docket, even after defendants pointed out in their reply brief that the deposition had not been filed. It is too late for Alt to supplement the record now.

The court sets forth the undisputed facts below. Additional facts will be discussed as they become relevant to the analysis.

## B.  Undisputed facts

In 2022, the school district hired Alt as a middle school principal. In 2023, the district renewed Alt's contract for two years. The contract allowed termination for just cause.

Defendant Rainey L. Briggs was the district's superintendent. In August 2023, Briggs suspended Alt for three days after receiving a complaint that she had acted disrespectfully during a retreat and another complaint that she had failed to follow directions for filling a vacant position. The reprimand letter warned Alt that "[r]epeated behavior will be grounds for immediate discharge." Alt did not challenge her suspension.

When Alt returned from her suspension, she was placed on a performance improvement plan. In October 2023, Briggs received the following complaint about Alt from defendant Sarah Eckert, who was the director of secondary learning and teaching as well as Alt's direct supervisor:

> On October 18, 2023, I requested a meeting with Dr. Briggs and Pat Doty [the director of student services] to discuss the concerns regarding Mrs. Alt's misconduct and unprofessionalism. This was in response to mounting concerns and allegations posed by numerous staff members that were brought to my attention. The concerns around actions leading to emotional stress and a toxic work culture impacting multiple buildings [were] reported. [A]lso reported [were] my concerns around my working relationship with Abby Alt and distrust in the information provided to me from Mrs. Alt, including information around her progress in her plan of improvement.

The following day, Briggs placed Alt on paid leave pending an investigation into Eckert's allegations.

Briggs assigned the investigation to Yvette Updike, the district's executive director of finance and operations. Updike interviewed 16 witnesses, including Alt. On October 23, Updike met with Alt, Alt's counsel, and Briggs to share her findings. These were later summarized into a written report. Among Updike's findings were the following:

- Briggs directed Alt not to talk to any other staff about the investigation, but Alt disobeyed that directive and then lied about it.

- Alt did not provide timely responses or any responses to emails and other "necessary communication."

- Alt used disrespectful and unprofessional body language toward other staff, such as rolling her eyes.

- Alt made negative statements about the school district, stating "do not trust" district administrators.

- Alt discussed sexual matters such as anal sex around other staff.

- Alt lied about collaborating with Eckert in preparing various staff communications.

Updike recommended termination of Alt's employment for just cause. Updike considered both the conduct that was the subject of the investigation and the fact that Alt was already on a performance improvement plan.

On November 13, in response to an open records request, Alt received Updike's notes on her investigation.

On November 22, Briggs provided Alt with a five-page letter explaining why he was recommending to the school board that she be terminated. Briggs's letter was based on the information provided by Updike. The letter provided numerous reasons for the decision, divided into six categories: (1) unprofessional conduct; (2) lack of teamwork; (3) lack of communication; (4) failure to demonstrate leadership; (5) dishonest and immoral conduct; and

(6) insubordination. Briggs listed more than 50 instances of alleged misconduct, including the following:

- rolling her eyes and making dismissive hand gesture when speaking to the school psychologist, excluding her from meetings and decisions, and telling her that her role is "just attendance and behavior";

- telling a student to "shut up";

- calling a student "dumb" during a student services meeting;

- excluding the associate principal from meetings and failing to keep her informed;

- failing to consult with Eckert on hiring decisions;

- failing to respond to emails;

- holding unannounced meetings without communicating their purpose;

- openly referring to certain staff members as "outliers" during staff meetings rather than in private conversations;

- directing the student services team not to communicate with the district office;

- falsely stating that she had not spoken to other employees about the investigation against her;

- lying to Eckert about collaborating with a coworker to prepare a presentation when in fact Alt copied the coworker's work without permission.

Dkt. 46-7.

On December 11, the school board held a hearing on Briggs's recommendation. The board members were defendants Kevin Vodak (the board president), Joey Rivas, Amy DeLong, Carolyn Bonanno, Tim Heilman, Gwynne Peterson, and Catherine Kalish. Both sides were represented by legal counsel, had one hour to present their case to the board, and were allowed

to submit exhibits in support of their position. The exhibits included Updike's interview notes.[2] Alt also submitted a seven-page letter responding to Briggs's November 22 letter.

At the conclusion of the hearing, the board deliberated in private. In open session, the board accepted Briggs's recommendation and terminated Alt by a vote of six to one. The board did not issue a written decision.

On December 14, Alt exercised her right under the district's grievance procedure to file a grievance about her termination. The grievance process of a terminated employee has two stages. First, an evidentiary hearing is held by an officer from the Wisconsin Employment Relations Committee (WERC). The employee may present evidence and call witnesses at the hearing. After the hearing, the officer issues a written decision on the grievance, deciding de novo whether the termination decision "is based on a good and sufficient reason." Dkt. 46-6, at 2.

Second, if the employee or the district disagrees with the hearing officer's decision, the decision may be appealed to the school board. This is consistent with Wis. Stat. § 118.24(6), which states that the board makes termination decisions for principals. Both sides may make "a brief oral presentation" to the board, after which the board may affirm or reverse the officer's decision. Dkt. 46-6, at 4. The grievance procedure allows reversal on several grounds, including that the decision is not supported by substantial evidence or is otherwise erroneous. No written decision is required, and the board's decision is final.

---

[2] Alt suggests in her brief that the board did not have Updike's notes, but she testified in her deposition that the board did have them, Dkt. 41, at 142:17–25, and she did not dispute defendants' proposed finding of fact on the issue, Dkt. 70, ¶ 110.

In April 2024, a WERC hearing officer held an evidentiary hearing. In September 2024, the hearing officer issued a written decision in which she concluded that the board did not have just cause to terminate Alt and ordered the board to reinstate Alt. The hearing officer provided the following reasons: (1) three of the interviewed witnesses testified that Updike had incorrectly recorded their responses so that they were less favorable to Alt; (2) the district did not provide testimony of any witnesses who confirmed the accuracy of Updike's summaries; (3) many of the allegations against Alt were vague; (4) Updike did not attempt to corroborate witness statements; and (5) the district failed to meet its burden to show that Alt engaged in misconduct that warranted termination.

Briggs and Updike appealed the hearing officer's decision to the board. In November 2024, both sides were granted 15 minutes to argue to the board why the hearing officer's decision should be affirmed or reversed. The board also received the record before the hearing officer. After deliberating in closed session, the board voted unanimously to reverse the hearing officer's decision. In a letter following the hearing, board president Vodak wrote that the hearing officer's decision "is unsupported by substantial evidence in view of the record as submitted, is otherwise erroneous, and is in contravention of public policy decisions." Dkt. 45-7. Vodak did not elaborate on these reasons.

ANALYSIS

Alt asserts claims based on three legal theories: (1) due process; (2) breach of contract; and (3) tortious interference with a contract. In her complaint, the due process claim is based solely on an allegation that defendants were biased. Dkt. 1, ¶¶ 59–60. In her summary judgment brief, Alt asserts a new due process claim that defendants did not provide her

7

adequate notice of the allegations against her. Ordinarily, a plaintiff may not assert new claims at the summary judgment stage, *see Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488–90 (7th Cir. 2023), but both sides have briefed these claims, and defendants do not object to the claims on procedural grounds. So the court will consider all of these claims on the merits.

On a motion for summary judgment, the question is whether there are any genuine disputes of material fact. Fed. R. Civ. P. 56(a). A factual dispute is genuine if it is based on admissible evidence that actually contradicts opposing evidence. *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012). A genuine factual dispute is material if it could make a difference to the outcome of the case, or, in other words, a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

## A.  Due Process

The Due Process Clause in the Fourteenth Amendment requires notice and an opportunity to be heard before depriving someone of liberty or property within the meaning of the clause. *See Booker El v. Superintendent, Indiana State Prison,* 668 F.3d 896, 900 (7th Cir. 2012). In this case, there is no dispute that Alt was deprived of a property interest under the Due Process Clause because she could not be fired without just cause under her contract. *See Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 713 (7th Cir. 2014); *Powers v. Richards*, 549 F.3d 505, 511 (7th Cir. 2008). The question is whether Alt was provided the process she was due.

In a case like this one in which the employee received a full hearing after she was terminated, the requirements for pre-termination process are "minimal": notice of the charges, an explanation of the employer's evidence, and an opportunity to present the employee's side

of the story. *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 927 (7th Cir. 2007). Part of an employee's right to present her side of the story is an impartial decisionmaker because "[a] hearing where the decisionmaker has prejudged the outcome . . . effectively denies the employee the opportunity to respond to the accusations against him." *Powers*, 549 F.3d at 511.

### 1. Notice

Alt says she did not have adequate notice for multiple reasons: (1) she did not receive a copy of Eckert's complaint against her until November 13, 2023; (2) Updike did not tell Alt the specific allegations against her while she was being interviewed in October 2023; (3) Updike did not provide her investigation notes when orally summarizing her findings in October 2023; and (4) Briggs's November 23, 2023 letter recommending termination was too vague.

Alt's first three allegations are undisputed, but Alt does not explain why any of them matter. Alt's pre-termination hearing was not until December 2023. In *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 399 (7th Cir. 2015), the court held that it was sufficient when the employer gave the employee notice of the charges *one day* before the hearing. So Alt was not entitled under the Due Process Clause to notice months earlier.

It is true that Alt was suspended with pay in October, but she has not asserted a claim that the suspension violated her due process rights. And even if she had, such a claim would fail because "suspension with pay does not trigger due process protections unless the suspension imposes a substantial indirect economic effect on the plaintiff." *Palka v. Shelton*, 623 F.3d 447, 452–53 (7th Cir. 2010). Alt does not identify any such economic effect.

As for Alt's contention that Briggs's letter was too vague, it is true that some of the allegations in the letter were about general concerns. For example, Briggs stated that Alt showed favoritism for certain staff members, did not communicate clearly, and failed to address staff

concerns as promised. Dkt. 46-7. But the letter included numerous allegations about specific statements and conduct too, some of which are listed in the facts section of this opinion. Regardless, Alt concedes that by November 13, Updike had provided her with an oral summary of her findings and Alt had obtained Updike's investigation notes. That is the same information that Briggs relied on to prepare his letter, so Alt knew the basis for the charges against her. The board also gave her an hour to present her case and submit any exhibits she wanted, so if she believed that the evidence did not support Briggs's allegations, she had the opportunity to try to demonstrate that. Alt identifies no evidence that either Briggs or the board considered that she did not have access to. In sum, Alt had the requisite notice before her termination.

Alt also asserts that Updike's investigation was flawed for multiple reasons: she did not have an opportunity to propose witnesses for Updike to interview, some of Updike's questions "were not neutral" and others were "vague," and Updike did not record her interviews. Dkt. 52, at 9–10. These may be fair criticisms of the investigation, but they do not amount to a due process violation. *See Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 17-cv-36-jdp, 2019 WL 1430281, at *9 (W.D. Wis. Mar. 29, 2019) ("That [the employee] found many aspects of the pre-deprivation procedures to be deficient or unfair is not enough to state a due process claim."). The question before this court is not whether defendants correctly decided that Alt had engaged in misconduct warranting termination. Alt cites no authority for the view that she had a right to tell the school district how to conduct its investigation.

### 2. Opportunity to be heard

Alt does not contend that she was prevented from presenting any evidence or argument to the board. Instead, she contends that she was denied a fair opportunity to be heard because defendants were biased against her.

The standard to show bias in the context of employee discipline is not easy to meet, a point the court of appeals has emphasized many times. *See, e.g.*, *Schneiter v. Carr*, 148 F.4th 438, 450 (7th Cir. 2025) ("the standard for proving bias is not easily satisfied"); *Hess v. Bd. of Trs. of S. Illinois Univ.*, 839 F.3d 668, 675 (7th Cir. 2016) (describing burden as "heavy"). This is because public employers are entitled to a presumption of honesty and impartiality. *Hess*, 839 F.3d at 675. A plaintiff can overcome the presumption with evidence that "that the probability of actual bias is too high to be constitutionally tolerable." *Id.* The Supreme Court and the court of appeals have identified two situations in which that standard could be met: "an adjudicator has a pecuniary interest in the outcome or has been a target of personal abuse from the party before him." *Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 438 (7th Cir. 2004) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

Alt does not cite any evidence that any of the defendants had a pecuniary interest in Alt being terminated or that defendants had any specific reason to dislike Alt. Instead, Alt's primary argument is that bias can be inferred because Briggs and Updike were friends with each other and friends with some members of the school board. She relies especially on the declaration of a co-worker who saw Briggs and Updike having dinner with two board members the same day the board overturned the hearing officer's decision in Alt's favor. The co-worker says that she heard "loud laughter, clapping, and loud vocalizations" coming from the area

11

where defendants were sitting. Dkt. 59, ¶¶ 6–7.[3] Alt also cites declarations of other witnesses who saw Briggs and Updike socializing with board members at other times. *See, e.g.*, Dkt. 71, ¶ 115.

Alt cites no authority for the proposition that decisionmakers representing an employer violate the Due Process Clause if they are friends with those who were involved in the investigation. This is not surprising because the Supreme Court and the court of appeals have held the decisionmakers and investigators need not be separate entities at all. *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482 (1976); *Beischel*, 362 F.3d at 438. Like this case, both *Hortonville* and *Beischel* involved a claim that a school board was biased in the context of employee discipline. The courts held in both cases that it did not violate the Due Process Clause for the school board to both investigate and decide the discipline. *Hortonville*, 426 U.S. at 495–96; *Beischel*, 362 F.3d at 436–38. *Withrow* similarly rejected an argument that "agency members who participate in an investigation are disqualified from adjudicating." 421 U.S. at 52. If the investigation and the adjudication can be conducted by the same entity, then it necessarily follows that bias cannot be inferred simply because investigators and adjudicators are friends.

---

[3] The co-worker also says that defendants "seemed to be celebrating the decision of the board to reject the [hearing officer's] decision and recommendation regarding reinstatement of Alt's contract." Dkt. 59, ¶ 8. But the co-worker does not say that she could hear anything defendants were saying, and she does not otherwise provide a foundation for her belief that defendants were celebrating the board's decision. A witness must provide foundation for her testimony and may not rely on speculation at the summary judgment stage, *see Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 454-55 (7th Cir. 2015), so the court cannot consider that aspect of the declaration.

Alt relies on two other pieces of evidence to show bias: (1) the board deliberated for less than an hour before deciding to overturn the hearing officer's decision; and (2) a statement from Raynelle Syftestad, the school district's former human resources director, that she "often heard Briggs express pride in the fact that he could get the school board to vote as he wanted them to," Dkt. 57, ¶ 34.

As for the observation that the board decided the appeal quickly, Alt cites no authority for the view that due process requires a decisionmaker to deliberate for a certain amount of time. The board was already familiar with the case from the original hearing. And it could have reviewed the hearing officer's decision in advance of the deliberations. So a reasonable jury could not infer bias simply because the board's deliberation was relatively short.

It is true that the board had already demonstrated how it was inclined to rule when it voted to terminate Alt in 2023. But the court of appeals has previously held that there is no due process violation when a school board is responsible for both the pre-termination and post-termination decision. *See Halfhill v. Ne. Sch. Corp.*, 472 F.3d 496, 502–03 (7th Cir. 2006). "Even if prior to the hearing [defendants were] inclined to believe [Alt] should be fired, there would be no due process violation as long as [they] kept an open mind." *Powers*, 549 F.3d at 512. Alt has not cited evidence that the board members had a closed mind.

As for Syftestad's declaration, Alt is asking the court to draw the inference that the board terminated Alt's contract because of undue influence by Briggs rather than an independent review. But that is not a reasonable inference from Syftestad's declaration. Syftestad does not identify any specific statements Briggs made, she does say when or in what context Briggs made those statements, and she does not identify any specific decisions he swayed or explain how he might have swayed them. Most important, any statement Syftestad

13

heard could not have related to Alt's hearings before the board because those hearings occurred in December 2023 and November 2024. Syftestad admits in her declaration that she resigned from the school district in October 2023, Dkt. 57, ¶ 3, and she does not allege that she had any interaction with Briggs after that. Alt cites no evidence that any board member was improperly influenced by Briggs.

Alt cites *Ryan v. Illinois Department of Children & Family Services*, 185 F.3d 751 (7th Cir. 1999), and *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998), to support her bias claim, but neither case is instructive. In *Ryan*, the plaintiffs had publicly criticized the defendants, and the defendants had "reacted hostilely" to that criticism. The plaintiffs were later terminated for alleged misconduct, even though others had found the allegations of misconduct to be baseless, including the people who investigated the charges. 185 F.3d at 762–63. In this case, Alt has not cited any history of criticism or other bad blood between her and defendants. Rather, as in *Howard v. Defrates*, 811 F. App'x 376, 379 (7th Cir. 2020), Alt has not identified any reason why defendants would be biased against her.

It is true that the hearing officer concluded that the school district had not met its burden to prove just cause. But the court of appeals has rejected the view that bias can be inferred from a school board's rejection of a recommendation. *See Halfhill*, 472 F.3d at 503.

*Levenstein* provides even less guidance because it was decided at the pleading stage, and the court had to accept the plaintiff's bias allegations as true. In any event, the plaintiff in *Levenstein* alleged that the procedures used by the employer "were a blatant sham" and "[m]ost or all of them plainly violated internal . . . rules." 164 F.3d at 350. Alt cites no evidence like that.

Alt has identified plenty of ways the process she received could have been improved: Updike could have documented her evidence more thoroughly, Briggs could have provided more details in his letter, and the board could have explained in writing why it disagreed with the hearing officer's findings. Defendants also could have created stricter boundaries between the decisionmakers and the investigators. But these criticisms do not add up to a due process violation under the law of this circuit, so defendants are entitled to summary judgment.

## B. State-law claims

Alt asserts claims for breach of contract and tortious interference with a contract, which are both state-law claims. Jurisdiction over the state-law claims rests on 28 U.S.C. § 1367. "Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). In this case, neither side identifies any unusual circumstances that would justify a decision to retain jurisdiction over the state-law claims, so the court will dismiss those claims without prejudice to Alt refiling them in state court.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 42, is GRANTED. Plaintiff's claim under the Due Process Clause is DISMISSED with prejudice.

2. The court declines to exercise supplemental jurisdiction over plaintiff's state-law claims, and those claims are DISMISSED without prejudice to Alt refiling them in state court.

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered July 9, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge